2024 PA Super 134

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONIANNE MACIK | : | |
| | : | |
| Appellant | : | No. 529 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 12, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004707-2022

BEFORE: OLSON, J., KING, J., and LANE, J.

OPINION BY LANE, J.: **FILED: July 1, 2024**

Tonianne Macik ("Macik") appeals from the judgment of sentence imposed following her convictions for driving under the influence ("DUI")-controlled substance or metabolite (second offense), DUI-controlled substance-impaired ability (second offense), and careless driving.[1] Macik claims that the evidence was insufficient to support her convictions because the Commonwealth did not prove her *mens rea*. We hold: (1) the General Assembly's legislative purpose to impose absolute liability in subsections 3802(d)(1) and (2) of the Motor Vehicle Code is evident from the minimal term of imprisonment required for a conviction; (2) subsection 3802(d)(1) and (2) offenses do not require proof of *mens rea*; and (3) the Commonwealth's evidence was sufficient to establish that Macik was under

---

[1] **See** 75 Pa.C.S.A. §§ 3802(d)(1), (2), 3714(a).

the influence of drugs that caused her unsafe and impaired driving supporting her convictions. We affirm.

The trial court summarized the relevant facts underlying Macik's convictions as follows:

> Around 1:00 p.m. on May 5, 2022, Officer Michael Kriebel [("Officer Kriebel")] was on patrol in Shaler Township when he was dispatched to the scene of a two-vehicle accident on Babcock Boulevard. [Macik,] [t]he operator of one of the vehicles, . . . [who veered into oncoming traffic and caused the accident], . . . was crouched down by the curb and was crying. Officer Kriebel described [Macik]'s demeanor as borderline hysterical and very elevated. She appeared to be uninjured and told officers that she did not require medical attention from on-scene medics. While interacting with [Macik] he noted that she would calm down very briefly and the[n] immediately elevate back up while on her cell phone yelling at whomever she was speaking with . . .. After consulting with his Police Chief, Officer Kriebel decided that because [Macik] had no ride home from the scene and the concerns for her manner and the way she was acting, he would take [Macik] to the Shaler Township Police Station and figure out transportation for her. . . . Before being transported[,] he asked [Macik] if she had any drugs on her and she stated that she didn't have any as "they took them from me last night[."] During the ride to the station[,] [Macik] was going in and out, falling asleep and waking up. At one point Officer Kriebel had to call out to her to make sure that she was still conscious as she slumped over in the back seat. . . . Once they arrived at the station [Macik] told him that she was arrested for a DUI the previous night in Punxsutawney, Pennsylvania by the Pennsylvania State Police. She said that after her car was released, she drove back to the location where she was involved in the accident. [Officer] Kriebel was of the opinion that [Macik] was impaired and had operated her motor vehicle while under the influence[,] and contacted a drug recognition expert (["]DRE["]) to assess [Macik] and determine what type of substance might be the basis of her impairment. After the DRE completed the assessment, [Macik] was transported to the hospital where she consented to a blood draw. [The results of the blood test showed that Macik's blood contained amphetamines, a Schedule IV drug, and

- 2 -

benzodiazepines, and methamphetamines, both Schedule II drugs.]

Trial Court Opinion, 6/16/23, at 3-4 (internal citations and footnote omitted).

On April 12, 2023, following a non-jury trial, the trial court found Macik guilty of the aforementioned offenses after hearing the stipulated evidence.[2] The trial court sentenced Macik the same day to ninety days to five years' incarceration.[3] Macik did not file a post-sentence motion. The instant, timely appeal followed. Both Macik and the trial court complied with Pa.R.A.P. 1925.

On appeal, Macik raises the following issue for our review:

> Was . . . Macik erroneously convicted of violating 75 Pa.C.S.[A.] § 3802(d)(1) and 75 Pa.C.S.[A.] § 3802(d)(2), given that, with respect to each conviction, the Commonwealth's evidence failed to establish that she acted with the *mens rea* required to commit those crimes?

Macik's Brief at 3.[4]

Macik argues the evidence was insufficient to support her convictions. Our standard of review of a sufficiency challenge is well settled:

---

[2] Macik and the Commonwealth agreed to enter the following evidence at the stipulated non-jury trial: (1) the affidavit of probable cause written by Officer Kriebel; (2) Pennsylvania Department of Transportation Form DL-26 showing that Macik consented to a blood withdrawal for chemical testing; and (3) a report from the Allegheny County Medical Examiner's Office showing that on May 5, 2022, Macik's blood contained amphetamines, a Schedule IV drug, and benzodiazepines, and methamphetamines, both Schedule II drugs.

[3] The trial court imposed a mandatory minimum sentence of ninety days to five years' incarceration, as this was Macik's second offense for DUI within ten years. **See** 75 Pa.C.S.A. § 3804(c)(2).

[4] Macik does not challenge her conviction for careless driving; therefore, we do not address it herein.

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, 229 A.3d 298, 305–06 (Pa. Super. 2020)

(brackets and citations omitted).

With respect to DUI offenses involving controlled substances, the Motor Vehicle code provides as follows:

(d) Controlled substances. - An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act [CSA][5];

(ii) Schedule II or Schedule III controlled substance, as defined in [the CSA], which has not been medically prescribed for the individual; or

---

[5] *See* 35 P.S. § 108-104.

- 4 -

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(1), (2).

As our Supreme Court has observed, "subsection 3802(d)(1) prohibits one from driving if there is *any* amount of a Schedule I controlled substance, *any* amount of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or *any* amount of a metabolite of a controlled substance in one's blood." *Commonwealth v. Griffith*, 32 A.3d 1231, 1239 (Pa. 2011); *see also Commonwealth v. Etchison*, 916 A.2d 1169, 1174 (Pa. Super. 2007). Thus, for the Commonwealth to meet its burden of proof under subsection 3802(d)(1), it need only prove: (1) that the defendant was in actual physical control or operated the motor vehicle; and (2) that he or she had a Schedule I, II, or III controlled substance or a metabolite of a controlled substance in his or her blood. *See Commonwealth v. Whitmire*, 300 A.3d 484, 490 (Pa. Super. 2023); *see also Commonwealth v. May*, 271 A.3d 475, 480 (Pa. Super. 2022). There is no requirement under subsection 3802(d)(1) that the Commonwealth establish the defendant was impaired while driving. *See Whitmire*, 300 A.3d at 490; *see also May*, 271 A.3d at 480.

With respect to section 3802(d)(2), the Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug or combination of drugs to a degree that impaired his or her ability to safely drive that vehicle. *See Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008). Evidence of such impairment should be drawn from the totality of the factual circumstances. *See Commonwealth v. Spence*, 290 A.3d 301, 309 (Pa. Super. 2023). Sufficient evidence has been found through combinations of police officer observations, witness testimony to unsafe driving, and blood tests showing drugs in the driver's system. *See Griffith*, 32 A.3d at 1238.

Here, Macik does not dispute that there were Schedule II and Schedule IV drugs in her blood, and that she was incapable of driving safely while under the influence of these drugs, in violation of subsections 3802(d)(1) and 3802(d)(2). Indeed, she stipulated to these facts at trial. Instead, she devotes the entirety of her argument to a claim that, because neither subsection 3802(d)(1) nor 3802(d)(2) contains a *mens rea* element, and the legislature did not specifically indicate that it intended subsection 3802(d) to impose absolute liability, this Court should impute a *mens rea* element into the statute pursuant to 18 Pa.C.S.A. § 302.[6] Macik points out that strict

---

[6] Section 302 provides the default level of culpability where a criminal statute does not include an express *mens rea*. Under the default provision of section 302(c), "[w]hen the culpability sufficient to establish a material element of an
*(Footnote Continued Next Page)*

liability statutes are disfavored in the law, and that this Court should not interpret subsections 3802(d)(1) and 3802(d)(2) as imposing absolute liability. Macik urges this Court to apply the default *mens rea* of "recklessness" provided in the Crimes Code, **see** 18 Pa.C.S.A. § 302(b)(3), to the subject provisions of the Motor Vehicle Code. On this basis, Macik claims that the evidence was insufficient to support her convictions because the Commonwealth failed to prove that she: (1) was aware of, and disregarded, the substantial risk that the drugs she consumed on May 4, 2022, would remain in her bloodstream on May 5, 2022; and (2) was aware of, and disregarded, the substantial risk that the drugs she consumed on May 4, 2022, would impair her ability to safely drive on May 5, 2022.

Macik's claims implicate the proper interpretation of subsections 3802(d)(1) and 3802(d)(2). In this regard, our standard of review is well-settled:

> Statutory interpretation is a question of law, therefore our standard of review is *de novo*, and our scope of review is plenary. "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S.A § 1501 *et seq.*, which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."
>
> Generally, a statute's plain language provides the best indication of legislative intent. We will only look beyond the plain language of the statute when words are unclear or ambiguous, or the plain

---

offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S.A. § 302(c).

- 7 -

meaning would lead to "a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A § 1922(1). Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning.

***Commonwealth v. Torres–Kuilan***, 156 A.3d 1229, 1231 (Pa. Super. 2017) (some citations omitted).

When the General Assembly plainly indicates a legislative purpose to impose absolute liability, pursuant to 18 Pa.C.S.A. § 305(a)(2),[7] the Commonwealth does not have to establish a *mens rea* element in order to convict a defendant of a crime.

> [However,] as a general principle, absolute criminal liability statutes are an exception to the centuries old philosophy of criminal law that imposed criminal responsibility only for an act coupled with moral culpability. A criminal statute that imposes absolute liability typically involves regulation of traffic or liquor laws. Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulation of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. Along these same lines, an additional factor to consider when determining if the legislature intended to eliminate the *mens rea* requirement from a criminal statute is whether the statute imposes serious penalties. The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is the legislature did not intend to eliminate the *mens rea* requirement (unless the legislature plainly indicates otherwise in the language of the statute, as for statutory rape).

---

[7] Section 305(a)(2) addresses situations wherein culpability requirements are inapplicable to summary offenses and to offenses defined by other statutes, and provides: "[t]he requirements of culpability prescribed by section 301 of this title (relating to requirement of voluntary act) and section 302 of this title (relating to general requirements of culpability) do not apply to: . . . (2) offenses defined by statutes other than this title, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears. 18 Pa.C.S.A. § 305(a)(2)

***Commonwealth v. Pond***, 846 A.2d 699, 706 (Pa. Super. 2004) (citations, quotations, and quotation marks omitted).

Here, although the General Assembly did not indicate a legislative purpose to impose absolute liability, it is evident from the minimal term of imprisonment required following a subsection 3802(d) conviction that the legislature intended subsection 3802(d) of the DUI statute to impose strict liability that does not require proof of *mens rea*. Macik was convicted of violating subsections 3802(d)(1) and 3802(d)(2). For a first offense of these traffic-related crimes, a person is subject to a mandatory minimum term of seventy-two hours in prison and a maximum term of six months in prison. ***See*** 75 Pa.C.S.A. § 3804(c)(1); ***see also*** 75 Pa.C.S.A. § 3803(b)(2).[8] The nature of these offenses, *i.e.*, traffic -related violations, as well as the minimal possible term of imprisonment resulting from a conviction, provide sufficient *indicia* that the legislature intended to eliminate the *mens rea* element and make operating a vehicle after consuming certain specified drugs, or combinations of drugs, a strict liability crime.

---

[8] The penalties for these traffic-related offenses increase based only upon prior convictions. If the defendant has one prior conviction for DUI, they are subject to a mandatory minimum of ninety days in prison and a maximum penalty of five years in prison. ***See*** 75 Pa.C.S.A. § 3804(c)(2); ***see also*** 75 Pa.C.S.A. § 3803(b)(4). A third or subsequent DUI offense increases that mandatory minimum to one year in prison. ***See*** 75 Pa.C.S.A. § 3804(c)(3). Here, because Macik had a prior DUI conviction, she was subject to increased penalties.

Moreover, this Court has previously determined that section 3802(d)(1) is a strict liability statute. *See Commonwealth v. Karner*, 193 A.3d 986 n.2 (Pa. Super. 2018) (explaining that "[subsection] 3802(d)(1)(iii), concerning metabolite in the blood, is a strict liability offense *per se* and does not have a *mens rea* of recklessness or gross negligence"); *see also Commonwealth v. Reisinger*, 256 A.3d 3 n.4 (Pa. Super. 2021) (unpublished memorandum) (noting that DUI is a strict or absolute liability offense which does not require the establishment of culpability);[9] *Commonwealth v. Bell*, 229 A.3d 334 (Pa. Super. 2020) (unpublished memorandum) (holding that "even though . . . [subsection] 3802(d), is a strict liability offense, because the applicable statutes under both the Motor Vehicle Code . . . and the Crimes Code . . . provide for both the grading of the offense and the maximum penalty to be imposed, the default provisions of [section] 305 are not applicable"); *Commonwealth v. Collins*, 810 A.2d 698, 702 (Pa. Super. 2002) (noting that the prior version of the DUI law under section 3731(a)(2) omitted any reference to culpability and interpreting this omission to mean that the legislature intended DUI to be a strict or absolute liability offense).

Having determined that there is no *mens rea* element to the subsection 3802(d)(1) and (2) offenses for which Macik was convicted, we conclude that her sufficiency claims must necessarily fail. With respect to her conviction for

_____

[9] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

subsection 3802(d)(1), it prohibits operation of a vehicle if there is **any** amount of Schedule I, II, or III controlled substance or metabolite of a controlled substance, that has not been medically prescribed, in the individual's blood. **See Griffith**, 283 A.3d at 1239. At the non-jury trial, Macik stipulated to the affidavit of probable cause prepared by Officer Kriebel, which established that she had been operating her vehicle on May 5, 2022. **See** Affidavit of Probable Cause, 5/6/22, at 2. Macik further stipulated to the report from the Allegheny County Medical Examiner's Office establishing that on May 5, 2022, her blood contained amphetamines, a Schedule IV drug, and benzodiazepines, and methamphetamines, both Schedule II drugs. **See** Report, 6/9/22, at 2-3. Thus, as the uncontested evidence admitted at trial established that Macik operated her vehicle while she had a Schedule II controlled substance in her blood, we conclude that the evidence was sufficient to support her conviction for DUI pursuant to section 3802(d)(1)(ii).

With respect to subsection 3802(d)(2), as explained above, the Commonwealth must prove that, while driving or operating a vehicle, the accused was under the influence of a drug or combination of drugs to a degree that impaired his or her ability to safely drive that vehicle. **See Williamson**, 962 A.2d at 1204. Here, Macik stipulated to evidence which established that she operated her vehicle while she had amphetamines, a Schedule IV drug, and benzodiazepines, and methamphetamines, both Schedule II drugs in her blood. **See** Report, 6/9/22, at 2-3. Moreover, in his uncontested affidavit of

probable cause, Officer Kriebel noted that Macik had veered her vehicle into oncoming traffic, crossing a double-yellow line, causing the subject accident. *See* Affidavit of Probable Cause, 5/6/22, at 2. The officer indicated that Macik was "visibly shaken and . . . crying," and "could not remember what happened." *Id*. Macik told the officer that she had been arrested for DUI the prior evening and that police had taken all her drugs from her "last night." *Id*. As Officer Kriebel continued to question Macik, her "response time to questions had grown longer and she began to look at her phone with a distant gaze . . . as if not to be understanding what she was looking at." *Id*. Officer Kriebel discussed his observations of Macik's behavior with his police chief, who agreed that they should contact a drug recognition expert to determine if Macik was still impaired by the drugs she had ingested the night before. *Id*. Officer Kriebel then contacted Sergeant Wolfson, who performed drug recognition testing on Macik and concluded that she was still under the influence of drugs to a degree that would impair her ability to operate a motor vehicle. *Id*. Viewing this evidence in the light most favorable to the Commonwealth, we conclude that the stipulated evidence admitted at trial was sufficient to establish that, while operating a vehicle, Macik was under the influence of a drug or combination of drugs to a degree which impaired her ability to safely drive that vehicle. *See Griffith*, 32 A.3d at 1238. Accordingly, her sufficiency challenge merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  07/01/2024