**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN WATSON | : | |
| | : | |
| Appellant | : | No. 1362 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001982-2022

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: September 12, 2025**

Brian Watson ("Watson") appeals from the judgment of sentence imposed following his convictions for driving under the influence of alcohol or a controlled substance ("DUI") – second offense and failure to drive on the right side of the roadway.[1] We affirm.

The trial court aptly summarized the factual background as follows.

> . . . Chartiers Police Officer Jesse Broda [("Officer Broda")] testified at trial [to all of the following. On] September 30, 2022, Officer Broda responded to a call around 1:10 am regarding a motor vehicle accident[. A]s he approached the scene of the accident, he saw Watson standing outside the vehicle towards the front on the passenger side. The police officer observed that the vehicle had made a frontal impact into a telephone pole. Both doors of the vehicle were open, and both driver's side and passenger side airbags were deployed. Watson had vomit on the right side of his body. Justin Powell [("Powell")], who identified himself as the individual who placed the 911 call, was also present at the scene of the accident.

---

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 3301(a).

Officer Broda set forth in his report that "Watson was unable to answer questions regarding the accident and appeared to have trouble understanding what this officer was asking due to his intoxication." Officer Broda testified, however, that Watson did answer some questions, and the policer officer believed what Watson was saying. Officer Broda asked Watson if he was the one driving the vehicle, [and] Watson responded that he was the driver of the vehicle. Officer Broda testified that . . . Watson . . . indicated . . . several times that he was the driver of the vehicle. Officer Broda testified that Watson never swayed from his statements admitting to being the driver of the vehicle when asked by the police officer if he was the driver.

Officer Broda, who has investigated [DUI] incidents before, indicated that Watson had multiple symptoms of DUI, including slurred speech, bloodshot eyes, and unsteady gait. Officer Broda assessed that Watson was not capable of safe driving. Officer Broda did not have Watson perform a field sobriety test due to Watson's level of intoxication. Watson indicated to the police officer that he had come from Guntown[ Beer, a local bar,] even though the direction of his vehicle was heading towards Guntown [Beer]. Officer Broda located Watson's phone on the floor of the driver's seat. The police officer testified that there was vomit on the outside of the passenger door of the vehicle, and there was vomit on the inside of the door.

Watson was then transported . . . to [the] hospital. Officer Broda subsequently met Watson at the hospital [and] read the DL-26, verbatim, to [him]. Watson refused to sign the form. Officer Broda charged Watson with[, *inter alia*, DUI and failure to drive on the right side of the roadway] because he believed, based on his investigation, that Watson was the driver of the vehicle and he was incapable of safe driving.

Officer Broda, when questioned on cross-examination, testified that Powell, in the very beginning of [their conversation], stated that Watson was the driver of the vehicle.

Trial Court Memorandum Opinion, 10/4/24, at 2-4 (unnecessary capitalization and record citations omitted).[2]

At this juncture, we note that during pre-trial discovery, Watson provided the Commonwealth with a list of witnesses he intended to call at trial: Guntown Beer bartender, Taylor Piechnick ("Piechnick"); a mechanic, Guy Rump ("Rump"); Kaitlyn Miles ("Miles"); and Jake Day ("Day"), whom Watson alleged was the driver. Detective Kiprian Yarosh ("Detective Yarosh"), of the Washington County District Attorney's Office, interviewed these individuals and prepared a report about his interviews. Relevant to Watson's issues on appeal, we note that on cross-examination, Officer Broda testified he was not aware of these witnesses. *See* N.T., 4/22/24, at 31.

Meanwhile, Watson received Detective Yarosh's report four months prior to trial. Watson subpoenaed Detective Yarosh to testify at trial but learned he would not be available for trial because he was on sick leave. Nevertheless, Watson did not request a continuance in order to ensure Detective Yarosh could testify at trial.

Next, we summarize the trial testimony of the witness, Powell:

On the night of September 30, 2022, Powell['s] wife heard a loud crash outside. She called 911 and . . . asked Powell [to] make sure everybody was okay. [T]he accident was approximately four houses from his residence. As he walked up the road toward the accident, he saw a man walking his direction who was limping. The person kept walking down the road as Powell walked up to

---

[2] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to the "Defendant" to "Watson."

the accident. . . . Powell observed that a [car] had struck a telephone pole "dead on." . . . Powell . . . saw Watson . . . sitting in the driver's seat of the vehicle as Powell approached the car. Watson was groggy and "finally came to" as Powell was asking him if he was okay. Watson got out of the vehicle and started walking around.

When questioned on cross-examination, Powell unequivocally stated that he saw Watson sitting behind the wheel of the vehicle. . . .

* * * *

[On cross-examination by Watson,] Powell testified . . . that he did not know the actual identity of the driver on the night of the accident and, in fact, did not know Watson's name until he received a subpoena[.]

The Court, seeking clarification regarding Powell's testimony, [confirmed that Powell was able to identify Watson as the driver of the vehicle at the time of the stop, but that he did not know Watson's name until the court proceedings.]

Trial Court Memorandum Opinion, 10/4/24, at 4-5 (some record citations omitted).

The Commonwealth also presented a video taken by Officer Broda's mobile video recorder ("MVR"), as well as other witnesses. The trial court summarized:

The video shows . . . Powell approach the police cruiser as Officer Broda arrives at the scene of the accident. Officer Broda asks Powell "Are you the driver?" and Powell responds "No, he's the driver," referring to Watson who is seen standing next to the passenger side of the vehicle that had struck the telephone pole.

. . . Watson was asked by Officer Broda if he needed medical assistance and he responded "No." Watson, when asked if he had a wallet in his pocket, responded "Yes sir." Watson then removed the wallet from his pocket, removed his identification from his wallet and handed the identification to the police officer. Watson,

- 4 -

when asked by the police officer how much he had to drink tonight, responded "Three to five." The police officer asked Watson "Who was driving the vehicle?" and Watson responded "That was me." Officer Broda immediately followed up by asking, again, "You were driving?" and Watson immediately responded, "Yes sir." Watson, when asked who was in the vehicle with him, responded "It was one of my buddies that was here." Officer Broda asked, "Where were you coming from?" and Watson responded "Guntown[ Beer."]

\* \* \* \*

. . . Rump, owner of Rump G's Autoworks, testified that he performs autobody and auto mechanic repair work. Rump repaired the vehicle that was involved in the accident on September 30, 2022. Rump testified that there had to be two occupants inside the vehicle at the time of the accident because both airbags were deployed. Based on Rump's knowledge of the year, make, and model of the vehicle, he testified the passenger side airbag would not deploy without someone seated in the passenger seat. The seatbelts also had to be replaced as the driver's side seatbelt was in a locked position because the seatbelt extended out and the passenger's side seatbelt went into a locked position because there was weight on that seat. Rump testified there was some vomit on the front passenger side of the automobile and no vomit on the driver's side of the automobile.

. . . Piechnick testified that she was working as a bartender at Guntown [Beer] on the night of September 29 . . . into September 30, 2022. Piechnick testified that, after midnight, Watson and . . . Day came into the bar while she was closing up and gave them "a shot or two." Watson and Day stayed at the bar between [thirty] minutes to an hour. Watson was very intoxicated, exhibiting difficulties with walking and talking. Piechnick cut off Watson and Day since she was shutting the bar down. She testified that Watson was too drunk to drive.

Watson was stumbling on his way out and needed Piechnick and Day's assistance leaving the bar. Piechnick specifically testified that she assisted Watson to the passenger seat of Watson's car to ensure that he would not drive. Day, who had possession of the keys, drove. Piechnick stayed outside and watched the vehicle leave the parking lot of Guntown Beer with Day operating the vehicle. . . . Piechnick spoke with [Detective

Yarosh] and provided him [with] this information[ around] September 14, 2023.

Trial Court Memorandum Opinion, 10/4/24, at 6-8 (record citations omitted).

Finally, we summarize that Watson testified in his defense to the following at trial:

. . . On September 29, 2022, Watson arrived at All Star [Sports] Bar and Grill between 5:30-6:00 p.m. to watch a Thursday night football game. Watson went alone and ultimately met [Day], who began talking to him. Watson had about two to three drinks, dinner, and four to five shots with Day. Watson then drove himself and Day to another bar around 10:30 to 11:00 p.m. After a seven-to-eight-minute drive, Watson and Day arrived [at] the Bar Association [Restaurant]. They stayed for [thirty] to [forty-five] minutes. Watson had about three to four drinks there. They left the Bar Association [Restaurant] and went to Guntown [Beer], arriving around 11:45 p.m. Watson drove again, testifying that he does not usually let anyone drive his vehicle.

Watson recalls drinking at Guntown [Beer], having one to two shots. Shots of alcohol at Guntown [Beer] are usually closer to a double and Watson testified that the booze began to hit him. The last thing he solidly remembers is signing his tab. Watson vaguely remembers leaving Guntown Beer and having Piechnick holding him. Watson stated that he did not drive his vehicle leaving Guntown Beer, although he does not remember the impact of the accident. Watson remembers the officer trying to help him to the back of the vehicle. Watson felt as though he might have had a concussion but was not diagnosed with one. He did not have any facial scarring or cuts. Watson had vomit on his clothing on his upper right arm between his shoulder and bicep.

Watson testified that he remembers coming home from the hospital and falling asleep on the kitchen floor. He learned of the accident that morning and assumed he had driven the vehicle. Watson ultimately learned from another individual, [Miles], that he may not have driven, so he went to Guntown Beer to determine what had happened. Watson spoke with Piechnick and found out that Piechnick put him in the passenger seat and Day was there.

Watson testified that he is not sure why he identified himself as the driver to the police officer the night of the accident. Watson acknowledged that he was asked multiple times by the police officer if he was the driver, and Watson acknowledged that he confirmed multiple times that he was the driver of the vehicle. Watson also testified that he doesn't let anyone else drive his vehicle.

Trial Court Memorandum Opinion, 10/4/24, at 8-9 (unnecessary capitalization and record citations omitted).

On April 22, 2024, following a non-jury trial, the trial court found Watson guilty of DUI — second offense[3] and failure to drive on the right side of the roadway. On July 18, 2024, the trial court sentenced Watson to six months' probation, with ten days' electronic monitoring, and fines.

Watson filed a timely post sentence motion, arguing that: (1) the verdict was against the weight of the evidence; (2) he was entitled to judgment of acquittal because the Commonwealth's evidence failed to establish he was the driver of the vehicle; and (3) the Commonwealth "withheld" Detective Yarosh's report from Officer Broda, the investigating officer, and the report was thus after-discovered evidence, which likely would have produced a different verdict, thereby entitling him to a new trial. Petition for Post Sentence Relief, 7/29/24, at unnumbered 5. The trial court conducted a hearing, at which Watson's counsel acknowledged that Detective Yarosh's

_____

[3] The parties stipulated that Watson had a prior DUI conviction for purposes of establishing this was Watson's second offense for DUI within ten years. **See** 75 Pa.C.S.A. § 3804(c)(2).

report was not after-discovered evidence, but continued to argue that the report cast doubt on the reliability of the Commonwealth's witnesses and thus remained relevant to Watson's entitlement to relief. On October 4, 2024, the trial court denied Watson's post-sentence motion.

Thereafter, Watson filed a timely notice of appeal. Both Watson and the trial court complied with Pa.R.A.P. 1925.

Watson presents five issues for our review:

I. Did the trial court err[] as a matter of law and abuse[] its discretion by finding Watson guilty of all charges contained within the criminal information, which is against the weight of the evidence?

II. Did the trial court err[] as a matter of law and abuse[] its discretion by finding the Commonwealth's witness, . . . Powell, credible despite contradictory testimony at trial that differed from the recorded statements contained within the MVR?

III. Did the trial court err[] as a matter of law and abuse[] its discretion by determining that the Commonwealth established all elements of the offenses contained within the criminal information beyond a reasonable doubt?

IV. Did the trial court err[] as a matter of law and abuse[] its discretion by denying Watson's petition for post[-]sentence relief for a judg[]ment of acquittal?

V. Did the trial court err[] as a matter of law and abuse[] its discretion by denying Watson's petition for post[-]sentence relief for a new trial, as it was revealed that exculpatory evidence provided to the District Attorney's Office was never provided to the [investigating] officer?

Watson's Brief at 6 (unnecessary capitalization omitted).

In Watson's first two issues, he claims that the verdict was against the weight of the evidence and that the trial court erred by crediting Powell despite

contradictions between his trial testimony and his earlier statements recorded on the MVR. Since Watson's first two issues challenge the weight of the evidence, we address them together.

This Court's standard of review of a weight of the evidence claim is limited:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). The fact finder is free to believe all, some, or none of the evidence presented, and "to resolve any inconsistencies or discrepancies in the testimony in either party's favor." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017) (citations omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Commonwealth v. Beatty*, 227 A.3d 1277, 1286 (Pa. Super. 2020) (citation omitted).

This Court will not find an abuse of discretion

> based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Importantly, [this C]ourt should not find that a trial court abused its discretion merely because [we] disagree[] with the trial court's conclusion. Indeed, "when reviewing the trial court's exercise of discretion, it is improper for [this C]ourt to step[] into the shoes of the trial judge and review the evidence *de novo*. In other words, [this C]ourt may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court.

***Commonwealth v. Gill***, 206 A.3d 459, 467 (Pa. 2019) (citations and quotation marks omitted).

It is well settled that "[t]he fact that [an individual] was under the influence of alcohol does not affect the admissibility of [the] statements but rather goes to the weight which the jury may [give the person's] testimony." ***Commonwealth v. Slout***, 432 A.2d 609, 612 (Pa. Super. 1981).

With respect to DUI offenses, section 3802 of the Motor Vehicle Code provides, in relevant part:

**(a) General impairment.—**

(1) An individual may not drive, operate, or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating, or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

To sustain a conviction under subsection 3802(a)(1),

the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle; and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render her incapable of safe driving. To establish the second element, the Commonwealth must show that alcohol has

substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial

- 10 -

impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. . . .

*Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (*en banc*) (citation omitted).

Furthermore,

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior . . .; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; . . . and slurred speech. . . . The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. . . .

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

Under 75 Pa.C.S.A. § 1547(e), a defendant's refusal to submit to a blood alcohol concentration ("BAC") test may be used as evidence against the defendant:

(a) *General rule.* Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood . . . if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of . . . [section] 3802 . . ..

* * * *

(e) *Refusal admissible in evidence.* In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant

- 11 -

refused to submit to chemical testing as required by subsection (a) [(relating to driving under the influence of alcohol)] may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S.A. § 1547(a), (e).

Watson challenges the weight of the evidence. He argues that the trial court erred and abused its discretion by finding him guilty of all charges, despite evidence suggesting that he was not the driver of the vehicle at the time of the accident. Specifically, Watson argues that Piechnick testified that he was extremely intoxicated on the night of the accident, she assisted him into the front passenger seat of the vehicle, and she observed Day drive the vehicle away from the bar. Watson also claims that Rump testified that the passenger-side airbag deployment, the position of the seatbelts, and the location of vomit inside and outside the passenger door indicated someone occupied the passenger seat.

Watson contends that Powell's trial testimony contradicted the statements he made on the night of the accident, as shown on the MVR video. Watson maintains that the video showed Powell merely described shadows and a spooked deer, and "never indicates that he witnessed [Watson] behind the wheel of the" car nor another male, walking with a limp, leaving the scene. Watson's Brief at 17. Watson also asserts that Powell admitted at trial that he did not know the driver's identity on the night of the accident. Watson

- 12 -

argues that these inconsistencies undermine Powell's credibility and that the trial court improperly relied on his testimony.

Watson further relies on Officer Broda's trial testimony, that Watson exhibited extreme intoxication, difficulty understanding questions, and impaired balance. Watson contends that this casts doubt on the reliability of his repeated admissions, at the scene, that he was driving.[4]

Finally, Watson argues that, taken together, the eyewitness testimony, expert observations, inconsistencies in Powell's statements, and his own level of intoxication demonstrate that the trial court improperly weighed the evidence and that the guilty verdict shocks one's sense of justice.

In denying Watson's post-sentence motion weight of the evidence claim, the trial court explicitly considered witness credibility, the conflicting testimony, and the physical evidence. First, it weighed Watson's appearance and admissions to Officer Broda at the scene, as captured on the MVR video, against Watson's trial testimony that he did not drive the vehicle. As the trial court explained:

> The video clearly demonstrates that Watson was capable of understanding and answering several of the police officer's questions at the scene of the accident. . . .

---

[4] Watson also vaguely claims that he learned that he may not have driven the vehicle from Miles. However, Watson did not raise this claim before the trial court and on appeal, he provides no explanation regarding what Miles specifically said. Thus, he has waived this argument for our review. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Watson clearly exhibits signs of intoxication in the video, including being unsteady while standing on his feet, having slurred speech and at times appearing slow and lethargic. . . .

* * * *

Watson testified that he is not sure why he identified himself as the driver to the police officer the night of the accident. Watson acknowledged that he was asked multiple times by the police officer if he was the driver, and . . . that he confirmed multiple times that he was the driver of the vehicle. Watson also testified that he [does not] let anyone else drive his vehicle.

[However], Watson, as captured on the MVR video, admitted to the police officer at the scene of the accident that he was driving the vehicle. The court gave the appropriate weight to Watson's admission. This court took into consideration Watson appearing intoxicated in the video. The court also considered that Watson was able to provide accurate responses to numerous questions posed by Officer Broda to [him] at the scene of the accident.

Trial Court Memorandum Opinion, 10/4/24, at 6, 9 (quotation marks, citations, and unnecessary capitalization omitted).

Furthermore, the trial court reviewed Powell's testimony in light of the MVR video and Officer Broda's observations and found Powell credible. *See* *id*. at 4–5, 9. The trial court reasoned that: "[Powell] testified in a compelling manner at trial. He did not appear confused or uncertain when he testified, nor did he appear evasive." *Id*. at 9. The trial court concluded:

Based on all of the testimony and evidence adduced at trial, the court finds that the verdict was not so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative in the interest of justice. The court finds that the verdict was not against the weight of the evidence. . . .

*Id*. at 9-10.

Upon our review, we conclude the trial court did not abuse its discretion in denying a new trial on weight of the evidence grounds. *See Lyons*, 79 A.3d at 1067. We reiterate that the trial court was free to believe all, part, or none of the evidence. *See Jacoby*, 170 A.3d at 1078. We conclude that it properly weighed the evidence and credited Officer Broda's observations, Powell's testimony, Watson's admissions at the scene, and the MVR video. *See Slout*, 432 A.2d at 612. Discrepancies in witness recollections go to credibility, which is exclusively the factfinder's province. *See Jacoby*, 170 A.3d at 1078. Watson failed to demonstrate any abuse of discretion, and his weight of the evidence claim fails. *See Gill*, 206 A.3d at 467.

Furthermore, the trial court did not abuse its discretion in crediting Powell's testimony. The court found Powell credible in his identification of Watson as the driver, and it was entitled to rely on that testimony. *See Jacoby*, 170 A.3d at 1078. Powell testified that he observed Watson in the driver's seat and promptly identified him to Officer Broda, whose testimony was consistent with Powell's account. Thus, Watson's first and second claims fail.

In his third issue, Watson argues that the trial court erred by finding the Commonwealth proved all the elements of DUI beyond a reasonable doubt. Although Watson asserts a challenge to the sufficiency of the evidence, he

merely incorporates his weight-of-the-evidence arguments and his total discussion spans less than one page.[5]

This Court has addressed the "critical" distinction between a challenge to the sufficiency of the evidence and a challenge to the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). As stated above, "[a] motion . . . that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." ***Id***. It is well-settled that credibility determinations "go to the weight, not the sufficiency of the evidence." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa. Super. 2012).

We conclude that Watson fails to present a proper challenge to the sufficiency of the evidence, and instead merely attempts to recast his weight of the evidence claim. ***See Widmer***, 744 A.2d at 751; ***see also Bowen***, 55 A.3d at 1262. In purporting to challenge the sufficiency of the evidence, Watson "incorporates" his weight of the evidence arguments. Watson's Brief at 21. Aside from arguing "it was not established that he was driving or was in actual physical control of the" vehicle, Watson offers no additional discussion. ***Id***. Thus, he has waived any sufficiency claim. ***See*** Pa.R.A.P.

---

[5] Watson broadly frames his third issue as challenging the sufficiency of the evidence for "all elements of the offenses contained within the criminal information." Watson's Brief at 21. However, his argument exclusively concerns the DUI — second offense conviction and raises no challenge to the sufficiency of the evidence for failure to drive on the right side of the roadway. Accordingly, we address only the DUI conviction.

2119(a) (stating the argument shall include "such discussion and citation of authorities as are deemed pertinent").

Moreover, even if Watson had preserved a sufficiency challenge, we would determine no relief was due. Our standard of review of a sufficiency challenge is well settled:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [W]e may not weigh the evidence and substitute our judgment for the fact-finder. . . . Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Macik*, 319 A.3d 529, 533 (Pa. Super. 2024) (citation omitted), *appeal denied*, 332 A.3d 770 (Pa. 2025).

The trial court found the record evidence established each element of DUI beyond a reasonable doubt. The trial court credited Watson's admissions at the scene, Officer Broda's observations, and the MVR footage, concluding that this evidence proved Watson drove while under the influence. The trial court determined that conflicting testimony and minor inconsistencies did not undermine the verdict. As the trial court explained:

> The evidence presented at trial, including the video footage, as well as the testimony of Officer Jesse Broda, [Powell] and [Watson], when viewed in a light most favorable to the Commonwealth, is sufficient for the trier of fact to find that each

element of the crimes charged in this case is established beyond a reasonable doubt.

Trial Court Opinion, 11/27/24, at 5.

Based on our review of the record, we would conclude that the Commonwealth proved beyond a reasonable doubt that Watson operated the vehicle. *See* 75 Pa.C.S.A. §§ 3802(a)(1), 1547(e); *see also Gause*, 164 A.3d at 541; *Segida*, 985 A.2d at 879. Both Officer Broda's trial testimony and the MVR video, showed that Watson repeatedly admitted at the scene that he was driving, and understood and answered questions regarding who was driving and who else was in the car. Powell testified that, although he did not know Watson's identity at the time, Watson was in the driver's seat of the car but exited the car and walked to the passenger side. Accordingly, Watson's sufficiency claim is without merit.

In his fourth issue, Watson argues that the trial court erred by denying his post-sentence motion for judgment of acquittal. His entire argument consists of four sentences: (1) summaries that he filed a post-sentence motion, and the trial court denied it; (2) one sentence "incorporat[ing]" his first three issues; and (3) one sentence urging this Court to vacate the sentence "[b]ased upon the analysis contained within [his] brief." Watson's Brief at 22.

We determine Watson has waived this issue for failure to present a developed argument with citation to the record and discussion of relevant law. *See* Pa.R.A.P. 2119(a).

- 18 -

Moreover, even if properly preserved, Watson would not be entitled to relief. A motion for judgment of acquittal challenges the sufficiency of the evidence and should be granted "only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Foster*, 33 A.3d 632, 635 (Pa. Super. 2011) (citation omitted). For the reasons discussed above in rejecting Watson's sufficiency claim, the Commonwealth presented sufficient evidence to sustain the verdict. Accordingly, no relief is due.

In his fifth issue, Watson argues that the trial court erred by denying his post-sentence motion for a new trial based on the alleged nondisclosure of Detective Yarosh's report.[6] "Unless there has been a clear abuse of discretion, an appellate court will not disturb the trial court's denial of an appellant's motion for a new trial based on after-discovered evidence." *Commonwealth v. Chamberlain*, 30 A.3d 381, 416 (Pa. 2011) (citations omitted).

---

[6] We note Watson does not present any argument that the Commonwealth withheld any *exculpatory* evidence and does not present any argument under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Commonwealth v. Spotz*, 18 A.3d 244, 276 (Pa. 2011) (explaining that "[t]o establish a *Brady* violation, [a defendant] must prove[:] [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued"). *But see* Watson's Brief at 6 (statement of questions involved stating that prosecutor did not provide "exculpatory" evidence to the investigating officer).

- 19 -

A defendant seeking a new trial based on after-discovered evidence must "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Id*. at 409. He must also show:

> [t]he evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. . . .

*Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014) (citations omitted). "In addition, "the proposed new evidence must be 'producible and admissible.'" *Id*. at 825.

Watson argues that Officer Broda's trial testimony — that "[he] was not provided [the] report of Detective Yarosh" — constituted after discovered evidence. Watson's Brief at 23. Watson claims that he was unaware, until trial, that Officer Broda had not received Detective Yarosh's report. Watson further asserts that because Detective Yarosh did not appear at trial, he could not ask "why [his report] was not provided to" Officer Broda. *Id*. at 25. To this end, Watson additionally contends that the Commonwealth failed to provide Officer Broda with Detective Yarosh's report. Watson maintains "that Detective Yarosh was made aware of a recording of . . . Day allegedly admitting to driving [Watson's] vehicle . . . and crashing the vehicle." *Id*. Watson contends that "[h]ad Officer Broda been provided [with the report], he . . . could have made the decision to withdraw the charges against" Watson. *Id*. at 24. Finally, Watson avers that evidence, of "a recorded admission of .

. . Day to driving the vehicle" was material and likely would have led to a different verdict. *Id*. at 26.

In denying Watson's motion for a new trial, the trial court first rejected his claim that Officer Broda's *trial testimony* was after-discovered evidence. The court reasoned that this testimony was a "part of the trial record[,] was considered by the court before rendering a verdict," would not have altered the verdict given Watson's admissions at the scene and the corroborating MVR footage. Trial Court Memorandum Opinion, 10/4/24, at 12 (unnecessary capitalization omitted).

Second, the trial court reasoned that Watson himself received Detective Yarosh's report months before trial, subpoenaed Yarosh, learned of his unavailability in advance, and yet did not request a continuance. Third, the court determined that the report merely summarized interviews corroborating the trial testimony from Piechnick and Rump, which it had already considered. The trial court explained:

> Watson acknowledges that the evidence presented to the Washington County District Attorney's Office in September of 2023 is not after-discovered evidence. Rather, Watson argues that the newly discovered evidence is the trial testimony of Officer Broda, who testified that he was not provided any of the information that Watson provided to the Washington County District Attorney's Office in September of 2023.
>
> Watson's argument that Officer Broda's testimony is "new evidence" is misplaced. [B]efore the defendant is awarded a new trial because of after-discovered evidence, it must be established that the evidence would likely result in a different verdict. Officer Broda's testimony, that he was not given any of the information provided by Watson to the District Attorney's office, is part of the

- 21 -

trial record and was considered by the court before rendering a verdict. Therefore, Watson is not entitled to relief on his after-discovered evidence claim[.]

Trial Court Memorandum Opinion, 10/4/24, at 10-12 (unnecessary capitalization and citations omitted).

After our review of the record, we determine the trial court did not abuse its discretion in denying a new trial based on alleged withheld evidence. **See Chamberlain**, 30 A.3d at 416. The record supports the trial court's conclusions. First, we emphasize that at the post-sentence motion hearing, Watson's counsel acknowledged:

With all candor to the court, I cannot argue that this evidence that was presented to the District Attorney's Office in September of 2023 was discovered after the trial before you on April 22nd.

The newly discovered evidence argument that I would make is that the . . . affiant on the underlying charge had no idea and was never presented this evidence to do his own independent investigation.

The evidence that was discovered during the trial is that fact. . . .

N.T. (Motions Presentation), 8/1/24, at 9. Accordingly, we agree with the trial court, and indeed Watson's own admission, that **Detective Yarosh's investigation report** was not after-discovered evidence. Additionally, we note that on appeal, Watson does not dispute the trial court's reasoning that Officer Broda's **trial testimony** was not after-discovered evidence, as it was a part of the trial record and the court considered it before rendering a verdict. On this ground alone, we may determine that no relief is due.

Moreover, we agree with the trial court's reasoning that Watson knew of Detective Yarosh's report and his unavailability before trial yet declined to secure his testimony at trial. *See Castro*, 93 A.3d at 821 n.7. Finally, Detective Yarosh's report contained no new facts and merely reiterated evidence already presented. The trial court reasonably determined that disclosure of the report to Officer Broda would not have produced a different verdict, particularly considering Watson's own admissions and the MVR evidence. *See id*. Accordingly, Watson's after-discovered evidence claim warrants no relief.

We thus affirm Watson's judgment of sentence.

Judgment of sentence affirmed.

Judge Nichols joins.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/12/2025